**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**

_____

**DONALD SCHMELCHER,**

                             **Appellant,**

    vs.                                              **6:15-cv-00245
                                                                   (MAD)**

**COUNTY OF ONEIDA,**

                             **Appellee.**

_____

**APPEARANCES:**                                           **OF COUNSEL:**

**SELBACH LAW FIRM, PLLC**              **JAMES F. SELBACH, ESQ.**
290 Elwood Davis Road
Suite 290
Liverpool, New York 13088
Attorneys for Appellant

**SAUNDERS, KAHLER LAW FIRM**       **MERRITT S. LOCKE, ESQ.**
185 Genesee Street
Suite 1400
Utica, New York 13501-2194
Attorneys for Appellee

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

    Currently before the Court is an appeal from two orders of the United States Bankruptcy Court, Northern District of New York entered on February 13, 2015 and February 26, 2015 granting in part and denying in part Appellee's motion for sanctions pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") 9011(c) and 28 U.S.C. § 1927. *See* Dkt. No. 7-11.

### II. BACKGROUND

    Donald Schmelcher ("Appellant") filed for relief in the United States Bankruptcy Court, Northern District of New York, pursuant to Chapter 7 of the United States Bankruptcy Code on

July 22, 2011. *See* Dkt. No. 7-8 at 2. The bankruptcy court issued Appellant's discharge on October 25, 2011 and the case was administratively closed on November 10, 2011. *Id.* Although attorney James Selbach ("Attorney Selbach") was not Appellant's attorney for the Chapter 7 action, he filed an *ex parte* application to reopen Appellant's case in order to pursue contempt sanctions against Appellee and one other creditor for alleged violations of the discharge injunction imposed pursuant to 11 U.S.C. § 524(a)(2). *Id.* at 2-3. The bankruptcy court granted Attorney Selbach's application on May 22, 2014. *Id.* at 3.

On June 5, 2014, Attorney Selbach filed a contempt motion on Appellant's behalf against Appellee for a violation of the § 524(a)(2) discharge injunction (the "contempt motion"). *See id.* This motion was based upon Appellant's receipt of two delinquent tax notices for real property that he owned and a notice of tax sale on April 18, June 1, and July 31, 2012, respectively. *See* Dkt. No. 7-5 at ¶ 2; Dkt. No. 5-2. Appellee opposed this motion, asserting that no violation had occurred and notifying Attorney Selbach of its intent to file a separate motion seeking sanctions for filing a frivolous action unless he withdrew the contempt motion. Dkt. No. 7-8 at 3. After Attorney Selbach refused to withdraw the contempt motion, the bankruptcy court heard oral arguments on the matter on July 31, 2014, and again August 26, 2014. *Id.* At the later oral argument, the bankruptcy court requested the parties to file a brief on the specific issue of whether "there is a requirement on taxing jurisdictions to place 'disclaimer language' in their In Rem real property tax collection notices advising debtors who have received a discharge that the taxing jurisdiction is not seeking to enforce any personal liability against debtors for the real property taxes due and owing." Dkt. No. 13 at 6. Appellee filed a brief in support of its position on September 12, 2014. Dkt. No. 7-8 at 4. Despite bearing the burden of proof on the contempt motion, Attorney Selbach failed to file a brief on the issue. *Id.* On October 8, 2014, the

bankruptcy court denied Appellant's motion and concluded that the arguments presented in the contempt motion were meritless. *Id.* at 5.

On October 20, 2014, Appellee filed a motion for sanctions against Attorney Selbach pursuant to 28 U.S.C. § 1927 and FRBP 9011. *Id.* at 5-6. Attorney Selbach filed an affidavit and memorandum of law in opposition to this motion. *See* Dkt. Nos. 7-3, 7-4. Neither of these submissions presented any legal basis for the argument that a bankruptcy disclaimer is required on *in rem* delinquent tax notifications sent by a creditor to comply with the discharge injunction. The bankruptcy court denied Appellee's motion pursuant to 28 U.S.C. § 1927 and FRBP 9011(b)(1), and granted the motion pursuant to FRBP 9011(b)(2). *See* Dkt. No. 7-8. Specifically, the bankruptcy court found that both § 1927 and FRBP 9011(b)(1) require a showing of improper purpose in filing the allegedly frivolous motion to impose sanctions. *Id.* at 11, 15. Conversely, the bankruptcy court held that FRBP 9011(b)(2) does not require an improper purpose to impose sanctions and "extends to the duty to perform adequate legal research that confirms a party's legal position is warranted by existing law or a good faith argument for a modification or extension of law before the filing is made." *Id.* at 16. The bankruptcy court concluded that, "[g]iven Attorney Selbach's lack of a further submission regarding his disclaimer argument, the Court can only assume that this argument, like the Contempt Motion itself, lacked proper consideration and vetting." *Id.* at 17-18. Accordingly, the bankruptcy court granted Appellee's motion for sanctions pursuant to FRBP 9011(b)(2) and imposed sanctions in the amount of $4,863.00, representing attorney's fees and costs for opposing the initial contempt motion and bringing the latter motion for sanctions. *Id.* at 18-19; Dkt. No. 13 at 7. Attorney Selbach appealed this order on March 4, 2015. Dkt. No. 13 at 7.

### III. DISCUSSION

**A.     Legal Standards**

*1. Standard of Review*

In reviewing a bankruptcy court's decision, a district court applies the clearly erroneous standard to conclusions of fact and *de novo* review to conclusions of law. *See In re Petition of Bd. of Directors*, 275 B.R. 699, 703 (Bankr. S.D.N.Y. 2002) (citation omitted); Fed. R. Bankr. P. 8013. "A bankruptcy court's decision regarding an award of fees and sanctions is subject to review for an abuse of discretion." *Hawkins v. Levine*, 426 B.R. 36, 40 (N.D.N.Y. 2010) (quoting *Yarinsky v. Saratoga Springs Plastic Surgery*, 310 B.R. 493, 498 (N.D.N.Y. 2004)) (other citation omitted); *see also In re Ostas*, 158 B.R. 312, 320 n.13 (N.D.N.Y. 1993) (noting that Rule 11 jurisprudence is instructive in awarding sanctions under FRBP 9011); *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 405 (1990) (holding that Rule 11 sanctions are reviewed for abuse of discretion).

*2. Rule 9011(b)(2)*

FRBP 9011(b)(2) provides:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, . . .
>
> the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law.

11 U.S.C. § 9011(b). A court must "appl[y] an objective standard of reasonableness . . . in deciding whether the signer of a pleading, motion, or other paper has crossed the line between

advocacy and plain pettifoggery." *In re Zinke*, 157 B.R. 528, 531 (Bankr. E.D.N.Y. 1993) (quoting *United States v. Int'l Bhd. of Teamsters*, 948 F.2d 1338, 1344 (2d Cir. 1991)).

### *3. Section 524(a)(2) Discharge Injunction*

After a debtor has received a discharge in bankruptcy court, § 524(a)(2) operates as an injunction against any efforts "to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." 11 U.S.C. § 524(a)(2). However, it "only prevents enforcement of personal liability" and "does not prevent foreclosure of a lien on property." *In re Wiggins*, No. 12-13341, 2013 WL 4647256, *2, *3 (Bankr. S.D.N.Y. Aug. 29, 2013) (citations omitted).

**B.     Argument**

The instant appeal from the bankruptcy court presents two distinct issues.[1] The first is whether Appellant's submission of his contempt motion was completely devoid of merit so as to justify the imposition of sanctions. The second is whether granting sanctions in the form of attorney's fees and costs was appropriate.

### *1. Merit of the Contempt Motion*

#### *a. The Previous Proceedings*

The basis for Appellant's contempt motion was that Appellee allegedly violated the § 524(a)(2) discharge injunction by sending Appellant two delinquent tax notices and a notice of tax sale on April 18, June 1, and July 31, 2012, respectively. *See* Dkt. No. 5-2. The bankruptcy

---

[1] While the bankruptcy court considered arguments for sanctions against Attorney Selbach based on three separate grounds, only the adverse holding pursuant to FRBP 9011(b)(2) will be reviewed. *See* Dkt. No. 7-8.

5

court concluded that these notices were not a violation the § 524(a)(2) injunction because they were clearly sent "in furtherance of [Appellee's] *in rem* powers under local law to exercise its right to foreclose on the real property if the real property taxes are not paid." Dkt. No. 7-8 at 5. Due to this finding, the bankruptcy court concluded that "Attorney Selbach's position that [Appellee] violated the discharge injunction by virtue of its *in rem* notices had absolutely no chance of success under existing precedent." *Id.* at 17. Further, "Attorney Selbach's argument in an attempt to justify his filing of the Contempt Motion that the County's use of a bankruptcy disclaimer was required on its *in rem* notices was frivolous." *Id.*

Attorney Selbach had numerous opportunities to present support for his argument that bankruptcy disclaimers are required on tax lien notices in cases such as this. In his initial contempt motion, Attorney Selbach's affidavit makes no mention of the disclaimer requirement or of § 524(a)(2). *See* Dkt. No. 5-1. After the bankruptcy court heard oral arguments on this issue, it directed the parties to submit a letter brief specifically addressing whether a disclaimer was required. Despite this request, Attorney Selbach failed to file any further support for his contempt motion. Dkt. No. 7-3 at ¶ 15. In his response to Appellee's motion for sanctions, Attorney Selbach likewise failed to present any colorable argument that bankruptcy disclaimers are required on tax lien notices. Rather, these submissions focused solely on the argument that sanctions were inappropriate because his contempt motion was not made for an improper purpose. *See* Dkt. Nos. 7-3, 7-4. The only reference to the merit of the contempt motion was Attorney Selbach's statement that "[o]bviously, your deponent believed that the motion had merit." Dkt. No. 7-3 at ¶ 9.

In contrast to Attorney Selbach's failure to present an argument for why his contempt motion was meritorious, Appellee submitted multiple explanations of why it was frivolous. In its

6

opposition to the contempt motion, Appellee cited several cases stating that notices for *in rem* proceedings do not violate the § 524(a)(2) injunction, restated the language contained in the notices that identified them as being issued against Appellant's property as opposed to imposing personal liability for the tax lein, and emphasized that Appellant had received these notices two years prior to Attorney Selbach filing the contempt motion, during which time he made no attempt to address the alleged emotional distress resulting from the notices. *See* Dkt. No. 5-3 at ¶¶ 2, 7-9. In response to the bankruptcy court's specific request to brief the disclaimer argument, Appellee cited 11 U.S.C. § 524(j), which states that subsection (a)(2) does not act as an injunction against a creditor retaining a security interest in real property from sending periodic invoices, including delinquent tax notices, that are sent in the ordinary course of business. *See* Dkt. No. 6-1. Appellee also cited *Bibolotti v. American Home Mortgage Servicing*, which held that a creditor with an interest in real property who sent letters notifying the debtor that it was in default, that the creditor intended to accelerate the repayment schedule, and providing notice of a potential foreclosure proceeding was "permissible under the discharge injunction, and appears to be precisely the type of communication the discharge injunction allows secured creditors to use in order to enforce their rights against a property *in rem*, rather than personally against a debtor." *Id.* at 2 (quoting *Bibolotti v. Am. Home Mortg. Servicing*, 2013 U.S. Dist. LEXIS 69242, *29-31 (E.D. Tex. 2013)).

### *b. The Instant Appeal*

Appellant affirmed, for the first time on appeal, that the notices he received "made [him] think that [Appellee] was trying to collect taxes from [him] personally which [he] had included in [his] bankruptcy case." Dkt. No. 7-5 at ¶ 7. Attorney Selbach argues that Appellant, as an individual who is not trained in bankruptcy law, "does not understand the intricacies and

7

complexities of *in rem* and personal liability" proceedings. Dkt. No. 12 at 7-8. This argument is misplaced as the central question in imposing FRBP 9011(b)(2) sanctions is "whether a reasonable attorney could have concluded that the facts supporting the claim might be established[.]" *Nemeroff v. Abelson*, 620 F.2d 339, 348 (2d Cir. 1980). The requirements of FRBP 9011 apply to the attorney who signs the paper submitted to the court, *see In re Spectee Grp., Inc.*, 185 B.R. 146, 158-59 (Bankr. S.D.N.Y. 1995), and it is not concerned with whether an average person would be confused by the underlying law, *see In re Chi. Midwest Donut, Inc.*, 82 B.R. 943, 949 (Bankr. N.D. Ill. 1988) ("Notwithstanding an attorney's sincere belief in the merits of his client's position, that attorney has a duty to ascertain the facts and review the law to determine whether the facts fit within a recognized entitlement to relief or defense"). In light of Attorney Selbach's chosen specialization in the narrow field of automatic stay and discharge injunction violations, *see* Dkt. No. 7-3 at ¶ 10, the Court is not persuaded that a reasonable attorney is his position could not understand the difference between *in rem* collection notifications and those seeking to impose personal liability for the discharged debts.

  Attorney Selbach asserts, without citing any legal authority, that the bankruptcy court "failed to fulfill its duty by not conducting its own research on an argument that was advanced by a litigant" after he failed to present any supporting legal arguments for his contempt motion. Dkt. No. 12 at 11. This assertion is based on the bankruptcy court's statement that, "[g]iven Attorney Selbach's lack of a further submission regarding his disclaimer argument, the Court can only assume that this argument, like the Contempt Motion itself, lacked proper consideration and vetting." Dkt. No. 7-8 at 17-18. The Court finds that this statement assumes that Attorney Selbach failed to meet his obligations under FRBP 9011(b)(2) to conduct the necessary research to support his argument, and not that it assumed his argument lacked merit. The bankruptcy court

specifically stated in considering this issue that the "Rule 9011(b)(2) certification extends to the duty to perform adequate legal research that confirms a party's legal position is warranted by existing law or a good faith argument for a modification or extension of existing law before the filing is made." *Id.* at 16 (citing *In re Spickelmier*, 469 B.R. 903, 911 (Bankr. D. Nev. 2012)). Moreover, the bankruptcy court restated and considered the case law holding that *in rem* collection notifications did not violate the § 524(a)(2) discharge injunction, which it discussed in its initial decision denying Attorney Selbach's contempt motion. *See* Dkt. No. 7-8 at 5. Thus, the bankruptcy court did not assume, without conducting any independent legal research, that Attorney Selbach's motion lacked merit. Rather, it relied upon the plethora of case law before it clearly stating that his arguments were unfounded in this instance. Attorney Selbach's desire for the bankruptcy court to scour all available resources to find support for his motion does not indicate that the bankruptcy court acted improperly, especially given Attorney Selbach's complete failure to provide any support for his position. *See generally Citizens Against Casino Gambling in Erie Cnty. v. Kempthorne*, No. 06-CV-0001S, 2007 WL 1200473, *4 n.9 (W.D.N.Y. Apr. 20, 2007) ("It is not the Court's duty to research and make Defendants' arguments for them"); *see also* William W. Schwarzer, Sanctions Under the New Federal Rule 11 – A Closer Look, 104 F.R.D. 181, 193 (1985) ("A court has the right to expect that counsel will state the controlling law fairly and fully; indeed, unless that is done, the court cannot perform its task properly").

After failing to present any legal support for his contempt motion in his first three opportunities to do so, and despite his contention that he "was aware of this case law" at the time he filed the motion, Attorney Selbach now presents four cases purporting to support his argument that bankruptcy disclaimer language is required on delinquent tax notices to comply with the § 524(a)(2) injunction. *See* Dkt. No. 12 at 11-14. In *In re Anderson*, the creditor, who had a

9

security interest against the debtor's vehicle, repossessed the vehicle and subsequently sent the debtor a written notice. *In re Anderson*, 348 B.R. 652, 655 (Bankr. D. Del. 2006). That notice stated, in part, "'[t]his is not an attempt to collect a debt' but '[y]ou will be liable for any deficiency.'" *Id.* The court ruled that, while the repossession of the vehicle was appropriate, the issuance of the statement indicating that the debtor would remain liable for any deficiency was a violation of § 524(a)(2). *Id.* at 655, 661. The court found that sending the notice was a violation, notwithstanding that the creditor chose to include the following language: "[t]his letter is not an attempt to collect a debt; it is being mailed to comply with Article 9 of the Delaware Code." *Id.* at 661.

Second, in *In re Burch* the creditor had a security interest in real property owned by the debtor and, after the loan was discharged in bankruptcy, sent several notices requesting payment for the discharged loan and offering opportunities for a loan modification. *In re Burch*, No. C/A 09-07802, 2011 WL 3207083, *1 (Bankr. D.S.C. July 26, 2011). After these initial notifications, the debtor sent the creditor a cease and desist letter explaining that he had received a discharge and requesting the creditor to stop all debt collection notifications. *Id.* The creditor continued to contact the debtor for nearly two years by sending multiple written communications and by calling the debtor's house and his parents. *Id.* Some of the letters contained a disclaimer stating that, if the debtor had received a discharge for the debt, the notification was for informational purposes only. The court found that, notwithstanding the disclaimer language, this pervasive course of conduct violated the § 524(a)(2) discharge injunction. *Id.* at *3.

Third, in *In re Norlund*, the creditor, who had a security interest in the debtors' former home, sent a total of 24 communications to the debtors during a ten month period after they had received a bankruptcy discharge. *In re Norlund*, 494 B.R. 507, 510 (Bankr. E.D. Cal. 2011).

10

Some, but not all, of these communications contained a disclaimer that the notifications were not trying to collect on the debt that had been discharged. The court concluded that, while the disclaimer language indicated that some of the notices were not an attempt to collect a discharged debt, the overall affect of the barrage of notices referencing the discharged debt was a violation of § 524(a)(2). *Id.* at 519. Specifically, the court concluded that "[e]ven though [the creditor], at times, gave lip service to the debtors' earlier discharge, by sending 24 written communications to the debtors, it was communicating a none too subtle demand that the debtors pay it, discharge or no." *Id.* at 520.

Fourth, in *In re Youngkin*, the creditor, who had a security interest in real property owned by the debtor, sent sixteen written communications to the debtor after the debtor requested the creditor to cease all correspondences and informed it of her intent to surrender the property following her bankruptcy discharge. *In re Youngkin*, 12-08391-8, 2014 WL 789117, *6-7 (Bankr. E.D.N.C. Feb. 27, 2014). The court held that it "cannot ignore the cumluative effect and impact of all [the creditor's] communications when the Debtor had clearly communicated to [the creditor], on numerous occasions, her intentions to surrender the Property." *Id.* at *7. In regard to the disclaimer language in certain of the notices, the court focused on the underlying intent of the creditor in finding that the numerous communications violated § 524(a)(2). *Id.* ("[The creditor's] inclusion of DISCLAIMER # 1 in Exhibit O does not negate the ultimate intent of the letter").

After reviewing these cases, the Court finds that the bankruptcy court's failure to consider this precedent in its determination was not an abuse of discretion, and the holdings in these cases do not require reversal of the bankruptcy court's decision as a matter of law. *See generally United States v. Martinez*, 621 F.3d 101, 110 (2d Cir. 2010) ("[T]he exercise of discretion based on . . .

11

incorrect rulings of law would necessarily constitute an abuse of discretion"). While each of the cases cited by Attorney Selbach involve creditor notifications that contain bankruptcy disclaimer language, they clearly do not establish that such disclaimers are required. Rather, the courts focused on the underlying intent of the communications in deciding whether they violated § 524(a)(2), which was inferred from the sheer number of notifications sent, statements that prompt personal payment was required, and the extent to which the debtor notified the creditor to stop sending such notifications. Indeed, the courts found that communications containing the disclaimer language violated the discharge injunction in each of the cited cases. Thus, far from establishing that bankruptcy disclaimers are required for notifications seeking collection of *in rem* debts after a debtor's discharge, these cases turn on the intent of the creditor in sending its notifications to recover personal liabilities from the debtor.

Significantly, none of the cited cases involve a creditor who was collecting on *in rem* tax liabilities. This important distinguishing factor supports the bankruptcy court's conclusion that the "law on this issue is clear and it is particularly telling that not one reported § 524(a)(2) case exists against a taxing jurisdiction. This is undoubtedly because § 524(a)(2) is inapplicable in this instance." Dkt. No. 7-8 at 5. The lack of consideration given by the bankruptcy court to these tenuously related cases now cited by Attorney Selbach is reasonable given the clearly established principle that a taxing authority may continue to pursue *in rem* tax liabilities against a debtor without violating § 524(a)(2). The Court notes that, recognizing the absence of cases discussing local property tax collections, it is clearly established that efforts by other taxing authorities to collect post-discharge *in rem* tax liens do not violate § 524(a)(2), so long as those tax liabilities were not discharged by the bankruptcy proceeding. *See United States v. Uria*, 180 B.R. 688, 693 (S.D. Fla. 1995) ("As the language of 11 U.S.C. 524(a)(2) . . . indicate[s], rights against taxpayers

12

personally are affected by the bankruptcy discharge, but *in rem* lien rights are not" (quoting *In re Dillard*, 118 B.R. 89, 93 (Bankr. N.D. Ill. 1990)); *see also In re Purcell*, 362 B.R. 465, 477 (Bankr. E.D. Cal. 2007); *In re Appugliese*, 210 B.R. 890, 898 (Bankr. Mass. 1997); *Matter of McCorkle*, 209 B.R. 773, 776-77 (Bankr. M.D. Ga. 1997); *In re Harrell*, 57 B.R. 88, 90 (Bankr. S.C. 1985); *In re Isom*, 901 F.2d 744, 745-46 (9th Cir. 1990); *Matter of Dishong*, 188 B.R. 51, 54-55 (Bankr. M.D. Fla. 1995). Accordingly, the cases presented by Attorney Selbach in support of his contempt motion, during what is now his fourth opportunity to provide such research, do not indicate that the bankruptcy court's decision applied erroneous legal standards. Even if the bankruptcy court had been presented with this research by Attorney Selbach when he filed his contempt motion, it would have been within its discretion to conclude that the motion lacked merit given the distinguishing factors in each case and the clearly established precedent that it is acceptable for a creditor to send collection notifications for non-discharged *in rem* tax liens.

Attorney Selbach contends that sanctions are inappropriate in this case because they act as a chilling effect on advocating for the enforcement of the automatic stay and discharge injunctions. *See* Dkt. No. 12 at 14-15. Attorney Selbach argues that the "message that is clearly sent to the debtors bankruptcy bar by the Court's decision is that if the Court disagrees with the attorney's interpretation of the law, the attorney may be sanctioned." *Id.* at 14. Contrary to Appellant's assertions, the bankruptcy court's imposition of sanctions in this case would not dissuade an attorney from submitting a reasoned, well researched argument for why a notification violated the § 524(a)(c) discharge injunction. The imposition of sanctions was not based solely on the bankruptcy court's disagreement with Attorney Selbach's view of the law, rather, the sanctions were granted due to Attorney Selbach's baseless contempt motion coupled with his repeated failure to either withdraw his motion or provide legal support for his argument. *See*

*Dangerfield v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, No. 02 Civ. 2561, 2003 WL 22227956, *2, *12 (S.D.N.Y. Sept. 26, 2003) (imposing sanctions against an attorney who was warned that if his complaint was not withdrawn the opposing party would seek sanctions and, in response to this warning, the attorney made "no effort whatsoever to assert that there was any legal basis for [his] claim"). The bankruptcy court properly considered "the necessity of finding egregious conduct before imposing Rule 11 Sanctions," *In re Two Star Surgical Supply, Inc.*, 92 B.R. 26, 29 (E.D.N.Y. 1988), and determined that Attorney Selbach's repeated failure to withdraw his motion or provide legal research to support his position, especially given his familiarity with this area of the law, was sufficiently egregious to warrant sanctions.

Based upon Attorney Selbach's failure to provide legal support for the contempt motion despite three opportunities to do so, his apparent lack of effort conducting legal research to support his motion, and the clearly established precedent that notifications for *in rem* tax collections do not violate the § 524(a)(2) discharge injunction, the Court concludes that the bankruptcy court did not abuse its discretion in granting Appellee's motion for sanctions pursuant to FRBP 9011(b)(2).[2]

### 2. *Attorney's Fees and Costs as Sanctions*

Attorney Selbach argues that the bankruptcy court was not required to impose sanctions upon finding a violation of FRBP 9011. *See* Dkt. No. 12 at 8. While it is true that sanctions are not mandatory upon finding a violation, it is within the discretion of the court to award such sanctions. *See Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 63 (2d Cir. 2012). The bankruptcy court's statement that sanctions were "necessitated" in this case does not indicate

---

[2] The Court notes that Appellant's argument that Appellee should be sanctioned for filing a motion seeking sanctions pursuant to 28 U.S.C. § 1927 is not properly asserted on this appeal. *See* Dkt. No. 12 at 9.

14

that the court concluded that "every meritless argument is sanctionable," *see* Dkt. No. 12 at 11, rather, that they were appropriate in this case given Attorney Selbach's complete failure to provide legal support for his arguments notwithstanding numerous opportunities to do so, *see* Dkt. No. 7-8 at 17; *see also* Blacks Law Dictionary (10th ed. 2014) (defining necessary as something "[t]hat is needed for some purpose or reason"). Accordingly, the Court finds that the bankruptcy court's choice of words to describe that sanctions were appropriate in this case is not grounds for reversal of its judgment.

Attorney Selbach contends that the bankruptcy court erred by granting sanctions in the form of attorney's fees because it found that he had not acted in bad faith. *See* Dkt. No. 12 at 16-17. In support of this argument, Attorney Selbach cites *Eastway Construction Corp. v. City of New York*, which states: "When acting within its equitable powers, costs may be awarded to a prevailing party only where the unsuccessful litigant has been found to have 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Id.* at 17 (citing *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985)). However, this case is inapplicable to instances when the court imposes sanctions pursuant to a statute, as opposed to its equitable powers. *See Hawkins v. Levine*, 426 B.R. 36, 43 (N.D.N.Y. 2010). FRBP 9011(c) provides that a court may award "the reasonable expenses and attorney's fees incurred in presenting or opposing the motion" as sanctions for an attorney filing a frivolous motion. 11 U.S.C. 9011(c)(1)(A).

The bankruptcy court clearly stated that it was imposing sanctions pursuant to FRBP 9011(c) and not under its equitable powers. *See* Dkt. No. 7-8 at 18. The bankruptcy court's order "impose[d] sanctions under Rule 9011(c) against Attorney Selbach in the form of attorneys' fees and costs payable to [Appellee] for reimbursement of [Appellee's] legal expenditures in defense of the Contempt Motion and in prosecution of the Sanctions Motion." *Id.* Further, the

15

bankruptcy court stated that "the Court may award attorneys' fees and other expenses incurred as a direct result of a party's violation of Federal Rule of Bankruptcy Procedure 9011(b)" and that "the Court may also award attorneys' fees and other expenses incurred by the movant in presenting a motion under Federal Rule of Bankruptcy Procedure 9011(c)(1)(A)." Dkt. No. 7-10 at 1-2. Accordingly, since the bankruptcy court awarded the sanctions pursuant to FRBP 9011(c) and not pursuant to its equitable powers, the imposition of sanctions in the form of attorney's fees was proper.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the February 13, 2015 Memorandum-Decision and Order and the February 26, 2015 Order of the bankruptcy court are **AFFIRMED**; and the Court further

**ORDERS** that Appellant's appeal is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of the Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: January 22, 2016
      Albany, New York

Mae A. D'Agostino
U.S. District Judge